## CHRISTOPHERSON v. OLESON.

1. A recital in the abstract that the court charged that the evidence established insolvency is, in the absence of the evidence and proper exceptions, binding upon the Supreme Court on the issue of insolvency.

2. While the question whether or not a creditor was charged with notice of his debtor's insolvency, and that a payment was intended as a preference, is ordinarily for the jury, yet, where the facts as to the financial condition of the debtor are clearly established by a special verdict, the court may, as a matter of law, hold that the creditor was charged with such notice.

3. Where, at the time property was transferred by a debtor to his creditor, the latter knew of the existence of judgments against the debtor, and that he had been unable to pay various notes and drafts, was allowing sight drafts to be dishonored, and was failing to pay other obligations and accounts as they became due, the creditor was chargeable, as a matter of law, with such notice as to put him upon inquiry to ascertain the debtor's financial condition, and whether he intended the transfer as a preference, in violation of Bankr. Act July 1, 1898, c. 541, § 60, subds. "a," "b," 30 Stat. 562 (U. S. Comp. St. 1901, p. 3445), declaring a transfer made within four months of bankruptcy proceedings, by which a creditor obtains a greater per centage of his debt than any other creditor of the same class, void, if such creditor had reasonable cause to believe that a preference was intended.

(Opinion filed March 1, 1905.)

Appeal from circuit court, Kingsbury county; Hon. JULIAN BENNETT, Judge.

Action by Charles A. Christopherson, as trustee in bankruptcy of the estate of Julius T. Christenson, bankrupt, against H. I. Oleson. From a judgment in favor of defendant, and from an order denying plaintiff's motion for judgment, plaintiff appeals. Reversed.

*C. H. Winsor* and *U. S. G. Cherry*, for appellant.

*Grigsby & Grigsby*, for respondent.

CORSON, P. J. This is an action by the plaintiff, as trustee in bankruptcy of the estate of Julius T. Christenson, bankrupt, to set aside and have declared void, as against the plaintiff and the creditors of the said bankrupt, certain accounts transferred by the bankrupt to the defendant, Oleson, within four months of the adjudication of bankruptcy by the United States District Court for the District of South Dakota. There was a general verdict in favor of the defendant, and special verdicts, and from the judgment in favor of the defendant denying plaintiff's motion for judgment in his favor the plaintiff has appealed.

The special verdicts are as follows:

"Question 1. Did the defendant H. I. Oleson, at the time Julius T. Christenson transferred to him the accounts in payment of his two notes, of $400 and $300, on or about the 4th of November, 1900, know of the existence of judgments against him on record in Kingsbury county? Answer. Yes. A. W. Stone, Foreman.

"Question 2. Did the defendant H. I. Oleson, at the time, Julius T. Christenson transferred to him the accounts in pay-

19 S. D.—12

ment of his two notes, of $400 and $300, on or about November 4, 1900, know that various notes, drafts, and accounts had been sent at different times prior to that date to the Merchants' Bank of Lake Preston, and that said Christenson had been unable to pay them? Answer. Yes. A. W. Stone, Foreman.

"Question 3. Did the defendant, Oleson, at the time Julius T. Christenson transferred to him the accounts in payment of his two notes, of $400 and $300, on or about November 4, 1900, know that the said Christenson was allowing sight drafts upon him to be dishonored, and that he was failing to pay his notes and accounts as they fell due? Answer. Yes. A. W. Stone, Foreman."

Upon the special verdicts the plaintiff moved the court for judgment in favor of the plaintiff as prayed for in the complaint, notwithstanding the general verdict of the jury in favor of the defendant. This motion was denied, and the court, in its judgment, recites that "the motion of the plaintiff for judgment as prayed for in his complaint upon the special findings of facts therein made is denied, and, on motion of said attorneys for the defendant, it is ordered, adjudged, and decreed that the defendant, H. I. Oleson, have judgment against said plaintiff as prayed for in his answer, and that the complaint of the said plaintiff be, and the same is, dismissed."

It is contended by the appellant that the judgment of the court notwithstanding the general verdict should have been in favor of the plaintiff upon the special verdicts returned by the jury. It is insisted by the respondent that the general verdict is not inconsistent with the special verdicts, and that the circuit court committed no error in rendering the judgment upon the general verdict.

The action is based upon subdivisions "a" and "b" of section 60 of the bankruptcy act of July 1, 1898, c. 541, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3445], and involves the construction of these two subdivisions, which read as follows: "(a) A person shall be deemed to have given a preference if, being insolvent, he has procured or suffered a judgment to be entered against himself in favor of any person, or made a transfer of any of his property, and the effect of the enforcement of such judgment or transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class. (b) If a bankrupt shall have given a preference within four months before the filing of a petition, or after the filing of the petition and before the adjudication, and the person receiving it, or to be benefited thereby, or his agent acting therein, shall have had reasonable cause to believe that it was intended thereby to give a preference, it shall be voidable by the trustee, and he may recover the property or its value from such person." "Insolvency," as used in this section, is defined in the act as follows: "A person shall be deemed insolvent within the provisions of this act whenever the aggregate of his property exclusive of any property which he may have conveyed, transferred, concealed, or removed, or permitted to be concealed or removed, with intent to defraud, hinder or delay his creditors, shall not at a fair valuation, be sufficient in amount to pay his debts." It will thus be seen that a person will be deemed to have given a preference if, being insolvent, he has made a transfer of any of his property to a creditor, and the effect of such transfer will be to enable such creditor to obtain a greater per cent. of his debt, over any other creditor of the same class, then he is

entitled to under the bankrupt laws, if such a preference is given within four months of the filing of the petition, and the person receiving the benefit shall have had reasonable cause to believe that the bankrupt intended thereby to give a preference, and the trustee may recover the property, or its value, from such person. In other words, when a bankrupt who is insolvent conveys to a creditor more than his proportion of his property, and the creditor so receiving such transfer, or to be benefited thereby, shall have reasonable cause to believe that it was thereby intended to give him a preference, such transfer is void, if made within four months of the adjudication or declaration that he is a bankrupt. It will be observed that the definition of the term "insolvency" in the act is different from the definition of the term as usually understood, and as given in the Civil Code of this state, which is, "A debtor is insolvent when he is unable to pay his debts from his own means when they become due." Section 2373, Rev. Civ. Code.

It is contended by the respondent that, as there is no finding that the respondent was actually insolvent, one of the essential elements upon which the action can be maintained is wanting, but the abstract contains the following recital: "Said cause came on duly for trial, and evidence was produced by the respective parties, and the jury was instructed by the court that the evidence established that said Julius T. Christenson was insolvent at the times alleged in the complaint, and, in response to the instructions of the court, returned special verdicts in favor of the plaintiff." For the purposes of this decision this ruling of the trial court must be regarded as the law of the case, and binding upon this court, in the absence of the evidence and proper exceptions. The only question therefore

presented is as to whether or not upon the special verdicts— assuming that the respondent was in fact insolvent—the respondent had sufficient notice to put him upon inquiry as to the solvency or insolvency of the bankrupt.

It will be observed that by the first special verdict it is found that respondent, at the time the property was transferred to him, knew of the existence of the judgments against the bankrupt; by the second special verdict, that he knew that various notes and drafts had been sent at different times prior to that date to the bank at Lake Preston, and that the same had not been paid; and by the third special verdict, that the defendant knew that the said bankrupt was allowing sight drafts to be dishonored, and that he had failed to pay the notes, drafts, and accounts as they became due. While the question as to whether or not the evidence is sufficient to charge a creditor with notice of the insolvency of the bankrupt at the time a payment is made and the bankrupt's intention to prefer the creditor is ordinarily a question for the jury, being one of law and fact (In re Eggert, 102 Fed. 735, 43 C. C. A. 1), yet, where the special verdicts so clearly establish the facts as to the financial condition of the bankrupt, we are of the opinion that the court may say, as a matter of law, that the respondent, who received a payment of a debt either in money or property from such a bankrupt under the circumstances described in this case, is chargeable with such notice as to put him upon inquiry as to the solvency of the bankrupt. Sebring v. Wellington (Sup.), 71 N. Y. Supp. 788. In that case the appellate court held that: "Where a creditor takes a mortgage from an insolvent, knowing that the latter had been deprived of a position because of a defalcation, that his principal indorser had

died; and that several of his notes had gone to protest; he is chargeable with notice that such mortgage was intended to give him a preference; making it voidable by his trustee in bankruptcy, under the federal bankrupt law." Clearly the case at bar is equally strong. With judgments against the bankrupt unpaid, various notes and drafts unpaid, all of which were well known to the respondent, he was charged, as a matter of law, with such notice as to put him upon inquiry to ascertain the condition of the bankrupt, and to ascertain why it was that these judgments, notes, and drafts were not paid; and they furnish a foundation for a reasonable cause to believe that an unlawful preference was intended, in fraud of the bankruptcy act. In Pepperdine v. National Exchange Bank, 84 Mo. App. 234, the court says: "Where a debtor is insolvent, within the meaning of the bankrupt act—that is, where his indebtedness is greater than his assets—and the creditor has knowledge of the insolvency, or where he has such information as would put a prudent man on inquiry, and receives a payment, it follows, as a necessary inference, that he had reasonable cause to believe that it was intended as a preference, and he can avoid this inference only by showing that an amount proportionable to the payment was made or provided for to the other creditors."

The respondent relies upon the case In re Eggert, supra. In that case the Court of Appeals of the Seventh Circuit, speaking by Mr. Justice JENKINS, after a review of the decisions of the United States Supreme Court, says: "That the creditor is not to be charged with knowledge of his debtor's financial condition from mere nonpayment of his debt, or from circumstances which give rise to mere suspicion in his mind of possi

ble insolvency; that it is not essential that the creditor should have actual knowledge of or belief in his debtor's insolvency, but that he should have reasonable cause to believe his debtor to be insolvent; that, if facts and circumstances with respect to the debtor's financial condition are brought home to him, such as would put an ordinarily prudent man upon inquiry, the creditor is chargeable with knowledge of the facts which such inquiry would reasonably be expected to disclose." It will be noticed in the opinion in that case that while the court says "that the creditor is not to be charged with knowledge of his debtor's financial condition from mere nonpayment of his debt, or from circumstances which give rise to mere suspicion in his mind of possible insolvency," it adds, "but that he should have reasonable cause to believe his debtor to be insolvent; that, if the facts and circumstances with respect to the debtor's financial condition are brought home to him, such as would put an ordinarily prudent man upon inquiry, the creditor is chargeable with knowledge of the facts which such inquiry should reasonably be expected to disclose." So that, while that learned court held that the mere nonpayment of the debt due the creditor was not in itself sufficient to charge him with notice or put him upon inquiry, yet, if there were other circumstances which were sufficient to put a reasonable man upon inquiry, then he would be chargeable with such notice of the facts which could be ascertained by such inquiry. As before stated, in the case at bar the special verdicts of the jury find not only that the bankrupt had failed to pay the debt of respondent when due, but that he failed to pay judgment, drafts, and notes, all of which was well known to the respondent. The case In re Eggert, supra, is not analogous to the case at bar, and hence is not authority against the appellant in this case.

It being established therefore by the record in this case that the bankrupt was in fact insolvent, and that such a state of facts existed as to his indebtedness as to put the respondent upon inquiry as to the solvency or insolvency of the bankrupt, and that as a result of such inquiry the respondent would have ascertained, if he did not then know as a fact, that the bankrupt was actually insolvent, he was therefore chargeable with notice that the bankrupt intended to give him a preference, which, as we have seen, under the law of Congress, makes it voidable by his trustee in bankruptcy. We are of the opinion, therefore, that the trial court should have granted the motion for a judgment in favor of the appellant upon the special verdicts, in connection with the court's ruling that the defendant was in fact insolvent, notwithstanding the general verdict of the jury in favor of the respondent, and should have entered judgment in favor of the appellant accordingly.

These conclusions lead to the reversal of the judgment of the circuit court, and the judgment and order of the circuit court denying a motion for a judgment in appellant's favor are reversed.